UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 15-cr-20581

v.                                 Judith E. Levy
                                 United States District Judge

Joseph James Roe,

                Defendant.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION FOR
<u>COMPASSIONATE RELEASE [355]</u>**

On July 26, 2018, this Court entered judgment after Defendant Joseph James Roe pleaded guilty to (1) conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). (ECF No. 315, PageID.2506.) The Court sentenced Defendant to 144 months' imprisonment. (*Id.* at PageID.2507.)

Defendant has been serving his sentence at Federal Correctional Institution (FCI) Elkton in Ohio. He now seeks compassionate release and an order that he be permitted to serve the remainder of his sentence in home confinement in Michigan. (ECF No. 355, 363.) More specifically,

he argues that the danger posed to him by the novel coronavirus (COVID-19) pandemic constitutes an "extraordinary and compelling reason" under the compassionate release statute requiring his immediate release.

For the foregoing reasons, Defendant's motion is DENIED WITHOUT PREJUDICE.

## I. Background

On March 13, 2020, the President of the United States declared a national emergency due to COVID-19. *Proclamation on Declaring a national Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020) https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. On March 22, 2020, the Governor of Michigan issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved

vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020).

In the short period of time since the national emergency was declared, the exceptionally dangerous nature of the COVID-19 pandemic has become apparent. On March 10, 2020, the Governor of Michigan announced the state's first two cases of COVID-19 and simultaneously declared a State of Emergency. Executive Order, No. 2020-4 (Mar. 10, 2020). The number of new cases is growing exponentially. As of May 28, 2020, that number is now at 56,014 confirmed cases and 5,372 reported deaths. *See Coronavirus*, Michigan.Gov, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. COVID-19 has a high risk of transmission, and the number and rate of confirmed cases indicate broad community spread. Executive Order, No. 2020-20 (Mar. 22, 2020).

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional*

3

*and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id*.

The CDC recommended that all correctional facilities take preventative measures, including: ensuring an adequate supply of hygiene and medical supplies, allowing for alcohol-based sanitizer throughout facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, increasing space between all detained persons to at least six feet, staggering meals, and having healthcare staff perform regular rounds. *Id*. Even if all of the CDC's interim

4

recommendations are followed, and reports suggest that they are not, the Court is concerned that such measures will prove insufficient to stem deadly outbreaks. *See, e.g.*, *New York City Board of Correction Calls for City to Begin Releasing People From Jail as Part of Public Health Response to COVID-19*, N.Y.C. Bd. of Corr. (Mar. 17, 2020), https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.03.17%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (arguing that, despite the "heroic work" of Department of Correction and Correctional Health Services staff "to prevent the transmission of COVID-19 in the jails and maintain safe and humane operations, the City must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances"). Indeed, on March 26, 2020, Attorney General Barr issued a separate directive ordering the Director of the Bureau of Prisons to "prioritiz[e] home confinement as appropriate in response to the COVID-19 pandemic . . . to protect the health and safety of BOP personnel and the people in our custody." *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020).

Research shows that prisoners and jail detainees are more likely than the general population to report experiencing infectious diseases, indicating that these individuals face a heightened risk during this pandemic. Laura M. Maruschak *et al.*, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Department of Justice, Bureau of Justice Statistics, (2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf. By way of example, on March 24, 2020 there was one prisoner who tested positive for COVID-19 in the Michigan prison system. Gus Burns, Michigan prisons prep for possibility of coronavirus outbreak among inmate population, M-Live (Mar. 26, 2020). As of May 28, 2020, the Michigan Department of Corrections confirmed that there are 3,604 cases of COVID-19 and that 65 people have died in its prisoner population. https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html.

Nationally, Bureau of Prison (BOP) detention facilities across the country are experiencing similar trends. As of May 28, 2020, BOP has confirmed at least 1,747 inmates testing positive with COVID-19, 3,232 recovered inmates, and 64 deaths among federal inmates. Among BOP

staff, there have been 413 staff recovered with COVID-19, and 187 testing positive as of May 28, 2020. *Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The Court understands and appreciates the severity of the situation.

## II. Legal Standard

Defendant seeks compassionate release and reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The relevant provision provides:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of . . . the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section § 3553(a) to the extent that they are applicable, if it finds that—
>
> i) extraordinary and compelling reasons warrant such a reduction.

7

*Id*.

There are two key questions of law in compassionate release cases. The first is whether a defendant satisfies the statutory requirement to either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait 30 days "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. The second is whether extraordinary and compelling reasons, as well as the defendant's own history and characteristics, warrant a reduction of the defendant's sentence. *Id*. The latter is the issue before the Court, as neither party disputes that Defendant has exhausted his administrative remedies.

### III. Analysis

#### A. *Extraordinary and Compelling Reasons Warranting Reduction of Sentence*

There are three components to a compassionate release merits-analysis: 1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; 2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and 3) whether Defendant would be a danger to the public.

8

In defining "extraordinary and compelling reasons," the compassionate release statute directs the Court to consider the United States Sentencing Guidelines. 18 U.S.C. §3582(c). United States Sentencing Guideline § 1B1.13 articulates that extraordinary and compelling circumstances exist, in relevant part, in the following instances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of

> a correctional facility and from which he or she is not expected to recover.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.*

Here, Defendant argues that his underlying health conditions—obesity and pre-diabetes—place him at increased risk of severe illness and death from a COVID-19 infection, making the COVID-19 pandemic an extraordinary and compelling circumstance that justifies compassionate release. In his medical records, Defendant's weight was reported as 250 pounds, and his height is 68 inches. (ECF No. 366-1 *SEALED*.) This puts his body mass index at 38, which is obese. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html. He also argues that he suffers from pre-diabetes, which he was diagnosed with in 2018. (ECF No. 365-1 *SEALED*.)

COVID-19 is a new disease, and while there is limited information regarding risk factors for severe illness, the CDC has not included obesity

with a body mass index under 40 or prediabetes in its list of underlying conditions that may put people at a higher risk of severe COVID-19 illness.[1]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Therefore, Defendant's underlying conditions do not put him at a higher risk of a dire outcome or death from COVID-19. Accordingly, extraordinary and compelling circumstances do not justify compassionate release.

In conclusion, Defendant has not shown that extraordinary and compelling reasons justify his release, and the Court therefore need not analyze the factors set forth in 18 U.S.C. §3553(a).

## IV. Conclusion

For the reasons set forth above, the Court DENIES Defendant's motion for compassionate release without prejudice. Defendant, through counsel, submitted supplemental information on the Defendant's risk factors that was helpful to the Court and an important reminder that the *novel* coronavirus is just that. Defendant may renew his motion should

---

[1] Severe obesity, defined as having a body mass index of 40 and above as well as diabetes are included in the CDC's list of risk factors for higher complications from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. However, obesity with a body mass index of under 40 and prediabetes are not included in this list.

his medical conditions change or should he present evidence demonstrating that his existing conditions significantly increase his likelihood of a dire outcome from COVID-19 while confined.

IT IS SO ORDERED.

Dated: June 5, 2020          s/Judith E. Levy
Ann Arbor, Michigan        JUDITH E. LEVY
                                       United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 5, 2020.

                                             s/William Barkholz
                                             WILLIAM BARKHOLZ
                                             Case Manager