UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,            CRIMINAL NO. 15-CR-20581

vs.                        HONORABLE JUDITH LEVY

D-1 JOSEPH ROE,

                Defendant.

---

## United States' Response Opposing
## the Defendant's Renewed Motion for Compassionate Release

---

Now comes the United States of America, by and through its undersigned attorneys and submits its response in opposition to defendant's renewed motion for compassionate release. Defendant Roe's motion should be denied because he remains a danger to the community, and the 3535(a) factors strongly weigh against compassionate release.

## I.    Roe is not eligible for compassionate release because of his dangerousness

While Roe's motion is properly before this Court, compassionate release is still not warranted. Compassionate release must be "consistent with applicable policy statements issued by the

1

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way.

In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not

2

amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1. As the Tenth Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *Saldana*, 2020 WL 1486892, at *3.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Roe and other inmates.

3

Thus, as the Third Circuit has explained, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

Here Roe's medical condition—particularly his obesity resulting in a BMI of over 30, which is now a CDC-recognized risk factor for Covid-19—may qualify as an "extraordinary and compelling reason" for compassionate release to be considered under USSG § 1B1.13. However, even if Roe's underlying medical condition and the Covid-19 pandemic satisfy the initial criteria for eligibility in USSG § 1B1.13 cmt. n.1, Roe would remain ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of certain offenders, including most drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010).

4

It also bars the release of many other defendants. An evaluation of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). So even many "non-violent" offenders—such as those who have been involved in serial or significant fraud schemes— may not be released under § 3582(c)(1)(A). USSG § 1B1.13(2).

Because Roe's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). As previously stated in the government's prior responses, Roe was the "ring leader" of large scale drug trafficking organization that engaged in the unlawful distribution of thousands of opioid pills. During his sentencing, the court noted the number of pills distributed by the conspiracy was "terrifying" and that Roe had not taken advantage of prior opportunities to change his ways, but "return[ed] to custody, return[ed] to custody, return[ed] to custody" instead. (*Id.* at 2647, 2652–53).

Roe is not eligible for compassionate release because of his dangerousness.

5

## II.   The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous (which Roe has not), he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Wenglasz eligible for compassionate release, the § 3553(a) factors should still disqualify him.

In a recent case in our district, *United States v. Mark Wenglasz*, the Court denied a motion for compassionate relief for a defendant who is

6

housed at Elkton FCI and has sever obesity based upon the § 3553(a)

sentencing factors. The Court held,

> The outbreak of COVID-19 does not alter the court's analysis
> of § 3553's sentencing factors. Although the conditions at FCI
> Elkton are cause for concern, they do not at this time support
> Defendant's release. 18 U.S.C. § 3582(c)(1)(A). To release
> Defendant, the court would be left to speculate as to whether
> COVID19 will continue to spread through FCI Elkton,
> despite the BOP's precautions, whether Defendant will
> contract the disease, and whether he will develop serious
> symptoms. [T]he court will not order his release over a year
> early, even considering the unique risks presented by
> COVID-19.

*United States v. Mark Wenglasz,* No. 17-20246 (E.D. Mich. June 30, 2020)

(Cleland, R.).

Here, Roe's conduct had a significant and devastating impact on

various communities, including the Eastern District of Michigan and

Tennessee. Roe also involved his child in his DTO. As the Court is aware,

Nichols Malinowski has an extensive drug addiction problem that was

likely fueled by acting as an opioid courier for his father. Instead of

assisting his child to overcome his drug addiction, Roe involved him a

multi-state opioid drug distribution ring.

Roe also preyed on those most vulnerable to act as patients in his

drug ring. He utilized individuals, who were addicted to opioids or illicit

7

substances or were beholden to him in some way. He endangered the lives of the citizens of Michigan, Tennessee and those who engaged in this conspiracy with him.

Roe has demonstrated that he has not been rehabilitated by his prior terms of incarceration, and if released from custody he will likely return to a life of crime. His release now would not reflect the seriousness of that offense, promote respect for the law, or provide just punishment for that offense. Additionally, early release would be unlikely to deter either Roe or other individuals from engaging in similarly dangerous conduct in the future.

As noted above, Roe has an extensive criminal history and continued to commit criminal offenses while on supervision. Roe is a danger to others and requiring him to serve his full sentence would protect the public from further crimes by him.

As in *Wenglasz*, the § 3553's sentencing factors in this case weigh against compassionate release.

### III. If the Court were to grant Roe's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Roe's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

### Conclusion

Roe's motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/REGINA R. MCCULLOUGH
Assistant United States Attorney
Chief, Health Care Fraud Unit
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9618
Dated: July 6, 2020                Email: Regina.McCullough@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th, day of July, 2020, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.

<u>s/REGINA R. MCCULLOUGH</u>
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9618
Bar No.: P64936